ENVIRONMENTAL PROTECTION AGENCY *v.* BROWN, GOVERNOR OF CALIFORNIA, ET AL.

No. 75–909.   Argued January 12, 1977—Decided May 2, 1977*

*Deputy Solicitor General Randolph* argued the cause for petitioners in Nos. 75–909 and 75–960, for petitioner in No. 75–1055, and for respondent in No. 75–1050.   With him on the briefs were *Solicitor General Bork, Assistant Attorney General Taft, Harriet S. Shapiro, Edmund B. Clark, Bruce J. Chasan, Neil T. Proto, John E. Bonine,* and *Gerald K. Gleason. David G. Hawkins* argued the cause and filed briefs for Washington Area Bicyclist Assn., Inc., et al., respondents under this Court's Rule 21 (4), in support of petitioners in Nos. 75–909, 75–960, and 75–1055.   *Joel S. Moskowitz,* Deputy

---

*Together with *Environmental Protection Agency* v. *Arizona et al.,* also on certiorari to the same court (see this Court's Rule 23 (5)); No. 75–960, *Environmental Protection Agency* v. *Maryland,* on certiorari to the United States Court of Appeals for the Fourth Circuit; and No. 75–1050, *Virginia ex rel. State Air Pollution Control Board* v. *Costle, Administrator, Environmental Protection Agency,* and No. 75–1055, *Costle, Administrator, Environmental Protection Agency* v. *District of Columbia et al.,* both on certiorari to the United States Court of Appeals for the District of Columbia Circuit.

Attorney General of California, and *Henry R. Lord,* Deputy Attorney General of Maryland, argued the cause for respondents in Nos. 75–909, 75–960, and 75–1055, and for petitioner in No. 75–1050. With them on the brief were *Bruce E. Babbitt,* Attorney General of Arizona, and *Anthony B. Ching,* Assistant Attorney General; *Evelle J. Younger,* Attorney General of California, and *Mark I. Weinberger,* Deputy Attorney General; *Francis B. Burch,* Attorney General of Maryland, and *Edward M. Norton, Jr.,* Assistant Attorney General; *Andrew P. Miller,* Attorney General of Virginia, *Walter A. McFarlane,* Deputy Attorney General, and *J. Thomas Steger,* Assistant Attorney General; *John R. Risher, Jr.,* Corporation Counsel of the District of Columbia, *Louis P. Robbins,* Principal Assistant Corporation Counsel, and *John C. Salyer,* Assistant Corporation Counsel.[†]

PER CURIAM.

These cases arise under the Clean Air Act, as amended by the Clean Air Amendments of 1970, 84 Stat. 1676, 42 U. S. C. § 1857 *et seq.,* and raise questions concerning the authority of the Administrator of the Environmental Protection Agency to compel various types of implementation and enforcement actions by the States. Four separate decisions in the Courts of Appeals reviewed transportation control plans promulgated by the Administrator for several States which had previously failed to submit adequate plans of their own. Four petitions have been filed seeking review of those decisions which, with limited exceptions, invalidated the Administrator's transportation control plans which had been adopted in the form of regulations.

Those transportation control plans have a variety of aspects

---

[†] *W. Bernard Richland* and *Alexander Gigante, Jr.,* filed a brief for the city of New York as *amicus curiae* urging reversal in part in Nos. 75–1050 and 75–1055, and affirmance in Nos. 75–909 and 75–960.

*Ronald A. Zumbrun* and *John H. Findley* filed a brief for the Pacific Legal Foundation as *amicus curiae* urging affirmance in all cases.

which need not be discussed in great detail to explain our disposition of these cases. In general, they imposed upon the States the obligations (1) to develop an inspection and maintenance program pertaining to the vehicles registered in the affected Air Quality Control Regions, and to submit to the Administrator, by fixed deadlines, both a schedule of compliance and the operative regulations by which the program was to be run; (2) to develop various retrofit programs pertaining to several classes of older vehicles, in order to minimize several different types of emissions; (3) to designate and enforce preferential bus and carpool lanes, on streets sometimes specifically identified in the regulations and sometimes left to be chosen by the State; (4) to develop a program to monitor actual emissions as affected by the foregoing programs; and (5) to adopt certain other programs which varied from State to State.

The critical fact about all of the foregoing obligations was that they were imposed on the States, under 40 CFR § 52.23 (1976), as elements of an applicable implementation plan. A State's failure to carry out any of them would therefore not merely allow the Administrator to step in and carry them out himself under § 113 (a)(2) of the Clean Air Act,[1] but would,

---

[1] Section 113 (a)(2), 42 U. S. C. § 1857c–8 (a)(2), provides:

"Whenever, on the basis of information available to him, the Administrator finds that violations of an applicable implementation plan are so widespread that such violations appear to result from a failure of the State in which the plan applies to enforce the plan effectively, he shall so notify the State. If the Administrator finds such failure extends beyond the 30th day after such notice, he shall give public notice of such finding. During the period beginning with such public notice and ending when such State satisfies the Administrator that it will enforce such plan (hereafter referred to in this section as 'period of federally assumed enforcement'), the Administrator may enforce any requirement of such plan with respect to any person—

"(A) by issuing an order to comply with such requirement, or

"(B) by bringing a civil action under subsection (b) of this section."

in the view of each of the Courts of Appeals, render the State "in violation of any requirement of an applicable implementation plan" and therefore apparently subject to direct enforcement actions against it under the provisions of § 113 (a)(1), 42 U. S. C. § 1857c–8 (a)(1):

"Whenever, on the basis of any information available to him, the Administrator finds that any person is in violation of any requirement of an applicable implementation plan, the Administrator shall notify the person in violation of the plan and the State in which the plan applies of such finding. If such violation extends beyond the 30th day after the date of the Administrator's notification, the Administrator may issue an order requiring such person to comply with the requirements of such plan or he may bring a civil action in accordance with subsection (b) of this section."

Under dual challenges by the States that these regulations were not within the mandate of the Act, and that if they were they were in violation of the Constitution, the United States Courts of Appeals for the Ninth, Fourth, and District of Columbia Circuits struck them down. All of the courts rested on statutory interpretation, but noted also that serious constitutional questions might be raised if the statute were read as the United States argued it should be. *Brown* v. *EPA,* 521 F. 2d 827 (CA9 1975); *Arizona* v. *EPA,* 521 F. 2d 825 (CA9 1975); *District of Columbia* v. *Train,* 172 U. S. App. D. C. 311, 521 F. 2d 971 (1975); *Maryland* v. *EPA,* 530 F. 2d 215 (CA4 1975). The only substantial variation in the outcome of these decisions [2] was that the District of Columbia Circuit affirmed regulations requiring the creation of bus lanes, the purchase by the affected jurisdictions of a fixed

---

[2] Prior to the decision of the Ninth Circuit, a similar set of regulations pertaining to Pennsylvania had been upheld by the Third Circuit. *Pennsylvania* v. *EPA,* 500 F. 2d 246 (1974). That decision is not presently before the Court.

number of new buses, and the denial of registration to a vehicle whose owner is unable to produce a federal certificate of compliance, should a federal inspection program be instituted.

The Solicitor General's petitions from all three Courts of Appeals challenged them only insofar as they invalidated the regulations requiring state inspection and maintenance programs. In addition, we granted the petition for certiorari of the Commonwealth of Virginia on its challenge to the regulations which the District of Columbia Circuit had upheld. Prior to argument, the Solicitor General informed the Court that repeal of the bus purchase regulations was imminent, Reply Brief for Federal Parties 25,[3] and that issue was thereby effectively removed from the case. Thus the litigation has undergone a great deal of shrinkage since the decisions below due to the federal parties' exercise of their prerogative not to seek review of the invalidation of certain regulations.

But the federal parties have not merely renounced an intent to pursue certain specified regulations; they now appear to admit that those remaining in controversy are invalid unless modified in certain respects:

> "The Administrator . . . concedes the necessity of removing from the regulations all requirements that the States submit legally adopted regulations; the [Administrator's] regulations contain no requirement that the State adopt laws." Brief for Federal Parties 20 n. 14.

The federal parties' position now appears to be that, while the challenged transportation plans do not require the enactment of state *legislation,* they do now contain, and must be modified to eliminate, certain requirements that the State promulgate *regulations.* See Reply Brief for Federal Parties 14 n. 22.

We decline the federal parties' invitation to pass upon the EPA regulations, when the only ones before us are admitted to be in need of certain essential modifications. Such action on

---

[3] The regulations were officially rescinded on February 8, 1977. 42 Fed. Reg. 7957.

our part would amount to the rendering of an advisory opinion. For this Court to review regulations normally required to be first reviewed in the Court of Appeals, before such review is had, is extraordinary. See *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U. S. 579, 584–585 (1952). For it to review regulations not yet promulgated, the final form of which has only been hinted at, would be wholly novel. See generally *Columbia Broadcasting System v. United States,* 316 U. S. 407, 417–419 (1942); *United States v. Los Angeles & Salt Lake R. Co.,* 273 U. S. 299, 309–310 (1927).

The judgments of the respective Courts of Appeals are vacated, and the cases are remanded for consideration of mootness and such other proceedings as may be consistent with this opinion.

*It is so ordered.*

MR. JUSTICE STEVENS, dissenting.

The action the Court takes today is just as puzzling as the federal parties' position. Unless and until the Environmental Protection Agency rescinds the regulations in dispute, it is perfectly clear that the litigation is not moot. Moreover, an apparent admission that those regulations are invalid unless modified is not a proper reason for vacating the Court of Appeals judgments which invalidated the regulations.

If the Court is satisfied that the EPA Administrator will modify the regulations regardless of the outcome of the litigation, the writs of certiorari should be dismissed as improvidently granted. On the other hand, if the survival of the regulations is dependent on our disposition of these cases, we should address the merits and resolve the issues which have been fully briefed and argued. By vacating the judgments below, the Court hands the federal parties a partial victory as a reward for an apparent concession that their position is not supported by the statute. I respectfully dissent.