BEAME, MAYOR OF NEW YORK CITY, ET AL. *v.*
FRIENDS OF THE EARTH ET AL.

No. A–99 (76–1718). Decided August 5, 1977

See: 552 F. 2d 25.

MR. JUSTICE MARSHALL, Circuit Justice.

Applicants, the city of New York (City) and several of its officials, seek a stay of enforcement of a judgment of the United States Court of Appeals for the Second Circuit pending determination by this Court of their petition for certiorari. In its judgment, entered January 18, 1977, the Court of Appeals directed the District Court to take steps to ensure that the Transportation Control Plan for the Metropolitan New York Area (Plan) "will be promptly implemented." *Friends of the Earth* v. *Carey,* 552 F. 2d 25, 39. Pursuant to this judgment, the District Court in February ordered applicants to begin implementation of four pollution control strategies, involving reductions in business district parking, taxicab cruising, and daytime freight movements, and the imposition of tolls on certain bridges into Manhattan. Applicants moved for a stay of this directive in the District Court and the Court of Appeals; both motions were denied. Applicants then sought a stay from me, and oral argument was heard in chambers. For the reasons that follow, I must deny the application for a stay.

## I

This case is the most recent skirmish in a long legal battle. In April 1973, the State of New York (State) submitted to the Administrator of the United States Environmental Protection Agency (EPA) the Plan here at issue, pursuant to § 110 (a)(1) of the Clean Air Act (Act), added by the Clean Air Amendments of 1970, 84 Stat. 1680, 42 U. S. C. § 1857c–5 (a)(1). The Administrator approved the Plan, and his approval was then challenged in court. The Second Circuit upheld the validity of the Plan in all material respects in *Friends of the Earth* v. *EPA*, 499 F. 2d 1118 (1974) (*Friends I*).

Soon after the *Friends I* decision, respondents filed the instant action, a citizen suit brought pursuant to § 304 of the Act, 84 Stat. 1706, 42 U. S. C. § 1857h–2. They sought to compel applicants to implement the four pollution control strategies referred to above. The District Court denied this request for enforcement of the Plan, and the Court of Appeals reversed, *Friends of the Earth* v. *Carey,* 535 F. 2d 165 (1976) (*Friends II*). The District Court then entered partial summary judgment for respondents in April 1976, but in July it significantly modified its judgment, ruling that the City did not have to enforce the Plan against any polluter other than itself. This holding was purportedly based on the Tenth Amendment as interpreted by this Court in *National League of Cities* v. *Usery,* 426 U. S. 833 (1976), and by lower courts in the cases consolidated in *EPA* v. *Brown,* 431 U. S. 99 (1977) (*per curiam*).

In January 1977, the Court of Appeals again reversed, *Friends of the Earth* v. *Carey,* 552 F. 2d 25 (*Friends III*), giving two alternative rationales for its holding that the April 1976 partial summary judgment should be reinstated. First, the court reasoned that applicants were precluded by § 307 (b)(2) of the Act, 84 Stat. 1708, 42 U. S. C. § 1857h–5 (b)(2), from making their constitutional attack on the Plan

as a defense to a civil enforcement proceeding. Such an attack could only have been made, the court stated, in a petition for review of the EPA Administrator's approval of the Plan in 1973—a time when the City was supporting the Plan. Second, even assuming no statutory preclusion, the court held that the District Court's Tenth Amendment analysis was in error, because the State here promulgated its own Plan, which thus represented its own policy choices. In the cases involved in *EPA* v. *Brown, supra,* by contrast, the EPA had promulgated plans for the States, pursuant to its mandate to do so whenever a State fails to submit a plan or submits an inadequate plan, see § 110 (c)(1) of the Act, 42 U. S. C. § 1857c–5 (c)(1). The Court of Appeals concluded that the federal intrusion into state affairs is much more limited in a case in which the Federal Government sets only goals and the State decides for itself how to reach them. Applicants' certiorari petition seeks review in this Court of both grounds for the Court of Appeals' holding.

## II

In deciding whether to grant a stay pending disposition of a petition for certiorari, the Members of this Court use two principal criteria. First, "a Circuit Justice should 'balance the equities'. . . and determine on which side the risk of irreparable injury weighs most heavily." *Holtzman* v. *Schlesinger,* 414 U. S. 1304, 1308–1309 (1973) (MARSHALL, J., in chambers). Second, assuming a balance of equities in favor of the applicant, the Circuit Justice must also determine whether "it is likely that four Members of this Court would vote to grant a writ of certiorari." *Id.,* at 1310. The burden of persuasion as to both of these issues rests on the applicant, and his burden is particularly heavy when, as here, a stay has been denied by the District Court and by a unanimous panel of the Court of Appeals. See *Magnum Import Co.* v. *Coty,* 262 U. S. 159, 163–164 (1923); *Board of Education* v. *Taylor,* 82 S. Ct. 10, 10–11 (1961) (BRENNAN, J., in chambers); cf.

*Holtzman* v. *Schlesinger, supra,* at 1314–1315 ("great weight" given to decision by Court of Appeals to grant stay).

Applicants have not met their burden of showing a balance of hardships in their favor. Were the injury to the City from implementation of the Plan as severe as applicants now claim, one would think that they would have filed their petition for certiorari with dispatch, so that this matter could have been resolved by the entire Court prior to the June 29, 1977, conclusion of the 1976 Term. Instead, applicants waited the maximum time, 90 days, after the Court of Appeals denied rehearing and rehearing en banc before filing their petition on June 2, 1977. In the interim, they did not seek any stay of the Court of Appeals' judgment and the ensuing District Court order; they first sought such a stay in the District Court a full 20 days after filing their certiorari petition. The applicants' delay in filing their petition and seeking a stay vitiates much of the force of their allegations of irreparable harm.

The allegations themselves are not compelling. The affidavits of City and Chamber of Commerce officials are offered to indicate some adverse economic impact on the City from implementation of the entire Plan. The Plan, however, is to be phased in over several months, and the affidavits and accompanying submissions contain little, if any, specific information as to the harm to be expected over the two months remaining until the entire Court can act on applicants' petition.

Respondents contend, moreover, that there will be some economic benefits from implementation of the Plan (*e. g.,* faster delivery times for trucks that currently have to maneuver around illegally parked cars, enhanced attractiveness of the City to businesses and tourists who currently avoid it because of its traffic, air pollution, and noise). Thus the economic-impact factor does not weigh entirely in applicants' favor. In addition, any adverse economic effect of the Plan's

partial implementation over the next two months is balanced to some considerable extent by the irreparable injury that air pollution may cause during that period, particularly for those with respiratory ailments. See *Friends II*, 535 F. 2d, at 179–180 (noting that Congress made the decision to put "the lungs and health of the community's citizens" ahead of some "inconvenience and expense to . . . governmental and private parties" and that the City's carbon monoxide levels are "over five times the federal health standards"). Finally, if specific aspects of the Plan prove to be onerous or unworkable, applicants are free at any time to seek an accommodation with EPA and a modification of the District Court's order.

## III

I have therefore concluded that the "balance of equities" does not weigh in applicants' favor. Even if it did, however, I am not persuaded that four Justices of this Court would vote to grant a writ of certiorari in this matter. The Court of Appeals gave alternative rationales for its result, and its opinion as to each appears facially correct. Applicants are thus not "likely to prevail on the merits," *Holtzman* v. *Schlesinger, supra,* at 1311; see *Times-Picayune Publishing Corp.* v. *Schulingkamp,* 419 U. S. 1301, 1305 (1974) (POWELL, J., in chambers) (requiring "significant possibility of reversal" in order to grant stay).

Judicial consideration of applicants' constitutional claim appears precluded at this point by the language of § 307 (b)(2) of the Act, 42 U. S. C. § 1857h–5 (b)(2)'. While this Court has granted certiorari in *Adamo Wrecking Co.* v. *United States,* 430 U. S. 953 (1977), in part to consider the validity of § 307 (b)(2)'s preclusion of defenses in a criminal context, applicants do not argue that any analogous considerations would make § 307 (b.)(2) invalid as applied in this civil case. Applicants' Tenth Amendment contentions are based on alleged similarities between this case and *EPA* v. *Brown, supra,*

but the fact that New York promulgated its own Plan makes this case significantly different from *Brown* and, in my view, renders insubstantial the Tenth Amendment issue here.

Finding neither a balance of irreparable harm in favor of applicants nor a likelihood that four Justices will vote to grant a writ of certiorari, I am compelled to deny the application for a stay.