WHEATON COLLEGE, Appellant

v.

Kathleen SEBELIUS, Secretary of the United States Department of Health and Human Services, et al., Appellees.

Nos. 12–5273, 12–5291.

United States Court of Appeals, District of Columbia Circuit.

Dec. 18, 2012.

Stuart Kyle Duncan, The Becket Fund, Washington, DC, for Appellant.

Alisa B. Klein, Stuart F. Delery, Adam C. Jed, Mark B. Stern, U.S. Department of Justice, Ronald C. Machen, Jr., Esquire, U.S. Attorney's Office, Washington, DC, for Appellees.

BEFORE: GARLAND and GRIFFITH, Circuit Judges, and RANDOLPH, Senior Circuit Judge.

## *ORDER*

PER CURIAM.

In their July 2010 Interim Final Rule, the government appellees issued regulations under the Affordable Care Act, 42 U.S.C. § 300gg–13(a)(4), requiring group health plans and health insurance issuers, unless grandfathered or otherwise exempt, to cover "preventive care and screening[s]" for women in accordance with guidelines to be promulgated by appellee Department of Health and Human Services at a later date. 75 Fed.Reg. 41,726, 41,728 (July 19,

2010). On August 1, 2011, the Department issued those guidelines, which require plans to cover all "FDA approved contraceptive[s]." *See* 77 Fed.Reg. 8725, 8725 (Feb. 15, 2012). An amended Interim Final Rule authorized an exemption for certain organizations with religious objections to contraception, but the exemption does not extend to the appellant religious colleges in these cases. 76 Fed.Reg. 46,621, 46,623 (Aug. 3, 2011). The appellants have filed complaints challenging the requirement that they provide contraceptive services in two separate complaints consolidated on appeal, which the district courts dismissed on grounds of standing and ripeness. Dismissal for lack of standing was erroneous because standing is assessed at the time of filing, *Chamber of Commerce v. EPA,* 642 F.3d 192, 200 (D.C.Cir.2011), and the colleges clearly had standing when these suits were filed. The ripeness question is more difficult.

■ In the Federal Register notice announcing their February 2012 Final Rule, the appellees left the religious employer exemption unchanged but created a safe harbor from enforcement of the contraceptive coverage requirement for entities like the appellants, which remains in effect until the first plan year that begins on or after August 1, 2013. 77 Fed.Reg. at 8728. (The plan years of both appellants begin January 2014.) The notice also announced the appellees' intention to "develop and propose changes to these final regulations that would meet two goals"—providing contraceptive coverage without cost-sharing to covered individuals and accommodating the religious objections of non-profit organizations like appellants. *Id.* at 8727. Thereafter, on March 21, 2012, the appellees issued an Advance Notice of Proposed Rulemaking (ANPRM), which states: "The Departments intend to propose that, when offering insured coverage to a religious organization that self-certifies as qualifying for the accommodation, a health insurer may not include contraceptive coverage in that organization's insured coverage. This means that contraceptive coverage would not be included in the plan document, contract, or premium charged to the religious organization." 77 Fed. Reg. 16,501, 16,505 (Mar. 21, 2012). (The ANPRM went on to state: "Instead, the issuer would be required to provide participants and beneficiaries covered under the plan separate coverage for contraceptive services ... without cost sharing...." *Id.*)

At oral argument, the government went further. First, it represented to the court that it would *never* enforce 45 C.F.R. § 147.130(a)(1)(iv) in its current form against the appellants or those similarly situated as regards contraceptive services. Oral Arg. Recording at 36:25–36:33. There will, the government said, be a different rule for entities like the appellants, Oral Arg. Recording at 37:25–38:46, and we take that as a binding commitment. The government further represented that it would publish a Notice of Proposed Rulemaking for the new rule in the first quarter of 2013 and would issue a new Final Rule before August 2013. Oral Arg. Recording at 35:39–36:02.

We take the government at its word and will hold it to it. *See EPA v. Brown,* 431 U.S. 99, 97 S.Ct. 1635, 52 L.Ed.2d 166 (1977). Based expressly upon the understanding that the government will not deviate from its considered representations to this court, we conclude that the cases are not fit for review at this time because "[i]f we do not decide [the merits of appellants' challenge to the current rule] now, we may never need to." *Am. Petroleum Inst. v. EPA,* 683 F.3d 382, 387 (D.C.Cir. 2012) (quoting *Nat'l Treasury Emps. Union v. United States,* 101 F.3d 1423, 1431 (D.C.Cir.1996)); *see Devia v. Nuclear Reg-*

*ulatory Comm'n,* 492 F.3d 421, 424 (D.C.Cir.2007) (same). The colleges argue that the government's promise not to enforce the mandate still leaves them exposed to liability from ERISA claims brought by employees and other beneficiaries. Although the parties disagree over the likelihood of that happening, we see nothing about the bringing of those claims that alters our conclusion that the petitioners' lawsuits should be held in abeyance pending the new rule that the government has promised will be issued soon. Upon consideration of the foregoing, it is

**ORDERED,** that in reliance upon the Departments' binding representations, this court will hold these cases in abeyance, subject to regular status reports to be filed by the government with this court every 60 days from the date of this order. *See Am. Petroleum Inst. v. EPA,* 683 F.3d at 390.