In re Gary BURKE, Pamela B. Burke, Debtors.

Gary BURKE, Pamela B. Burke, Plaintiffs,

v.

STATE OF GEORGIA, Acting Through Its Agency, The DEPARTMENT OF REVENUE, Defendant.

Bankruptcy No. 92–11482.
Adversary No. 95–01050A.

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

Sept. 6, 1996.

Angela Carter McElroy, McElroy & Toole, Augusta, GA, for Plaintiffs.

Shereen M. Walls, Assistant Attorney General, Atlanta, GA, for Defendant.

## *ORDER*

JOHN S. DALIS, Bankruptcy Judge.

Gary and Pamela Burke (hereinafter "Debtors") filed this action against the State of Georgia acting through its agency the Department of Revenue (hereinafter "Georgia") alleging a violation of the discharge injunction of 11 U.S.C. § 524(a).[1] Georgia

---

**1.** 11 U.S.C. § 524(a) provides:

a) A discharge in a case under this title—
(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived.
(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1) of this title, or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case con-

moved to dismiss the complaint asserting sovereign immunity and that it committed no willful violation of the discharge injunction as a matter of law. The motion is denied.

Georgia moves to dismiss this complaint under Federal Rule of Civil Procedure (FRCP) 41, made applicable to bankruptcy cases under Federal Rule of Bankruptcy Procedure (FRBP) 7041. FRCP 41 does not apply here. The motion seeks dismissal based on a lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. FRCP 12(b)(1) & (6) made applicable to bankruptcy cases under FRBP 7012. As Georgia requests that I consider the affidavits of Janice M. Coffman and Reginald Awtrey, matters outside the pleadings, I will dispose of the motion as one for summary judgment under FRCP 56, applicable to bankruptcy cases under FRBP 7056. See, FRCP 12(b).

 Under FRCP 56, this Court will grant summary judgment only if "... there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). The moving party has the burden of establishing its right of summary judgment. See, *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The evidence must be viewed in a light most favorable to the party opposing the motion. See, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The Court has jurisdiction to hear this matter as a core bankruptcy proceeding under 28 U.S.C. § 157(b)(2)(A), (B) & (O).

The Debtors filed a Chapter 13 case on August 14, 1992. On December 1, 1992, Georgia filed a proof of claim for state income taxes, including a secured claim of $856.21 for the tax year 1990, an unsecured priority claim of $12,437.40 for taxes and interest for the tax years 1980 through 1984, and a general unsecured claim of $1,810.50 for tax penalties incurred from 1980 through 1984. The Debtors objected to the priority status asserted in the $12,437.40 claim. By Order dated May 18, 1993 following a contested hearing, I sustained the objection and allowed the $12,437.46 claim as general unsecured. The Debtors converted their case to Chapter 7 on July 20, 1993, and received a discharge on February 1, 1994. Neither Georgia nor the Debtors filed an action to determine the dischargeability of these taxes under 11 U.S.C. § 523[2] prior to the case closing on February 9, 1994.

On May 3, 1994, Georgia sent a letter to the Debtors demanding payment of the 1990 taxes and the taxes for the years 1980–1984. On January 27, 1995, the Debtors moved to reopen their Chapter 7 case. Thereafter, the Debtors instituted this action against Georgia alleging that the demand letter violated the § 524(a) discharge injunction. Georgia filed a motion for summary judgment, alleging that the taxes were not discharged, and that it therefore did not violate the injunction. On August 9, 1995, I entered an order finding that the 1990 taxes were not discharged, but that the 1980–1984 taxes including accrued interest and penalties were discharged by the discharge order of February 1, 1994.

I. ALTHOUGH THE ELEVENTH AMENDMENT ESTABLISHES STATE IMMUNITY FROM SUIT IN FEDERAL COURT BY AN INDIVIDUAL, THE STATE OF GEORGIA, ACTING THROUGH ITS AGENCY THE DEPARTMENT OF REVENUE, HAS WAIVED THAT IMMUNITY IN THIS CASE.

 The Eleventh Amendment to the United States Constitution immunizes a

---

cerning the debtor, whether or not discharge of the debt based on such community claim is waived.

**2.** 11 U.S.C. § 523(a)(1) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

State from suit in the federal courts by a non-resident of that State [3]. Despite this narrow language, the Supreme Court has consistently interpreted the Eleventh Amendment to immunize States from suits by any individual, whether a resident of that State or of another State. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). This immunity restricts Congress from creating rights of action against States in federal court under Congress' Article I powers unless the State consents to suit. *Seminole Tribe v. Florida,* — U.S. —, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (Congress cannot abrogate a State's immunity from suit by creating a right of action against the State under the Indian Commerce Clause.) *But see, Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (The Fourteenth Amendment expressly authorizes Congress to enforce the provisions of that Article through legislation. Therefore, Congress may abrogate a State's Eleventh Amendment immunity under this authority.)

The Supreme Court established a two prong test to determine whether Congress may abrogate a State's immunity: "... first, whether Congress has unequivocally expressed its intent to abrogate the immunity, and second, whether Congress has acted pursuant to a valid exercise of power." (citations omitted) *Seminole Tribe* at —, 116 S.Ct. at 1123. In *Seminole Tribe* the Court acknowledged that Congress had unequivocally acted to abrogate State immunity from suit under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 et seq., but ruled that the Indian Commerce Clause of the Constitution (U.S. Const., Art. I, § 8, cl. 3 [4]) did not authorize Congress to abrogate this immunity. In determining that the Indian Commerce Clause did not authorize Congress to subject a State to suit in federal court by an individual, the Court reversed the line of cases holding that the Commerce Clause authorizes Congress to act so. *See e.g., Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989).

Bankruptcy Code, title 11 section 106 [5] unequivocally expresses Congressional intent to abrogate the States' sovereign immunity by subjecting them to damage awards for viola-

**3.** U.S. Const.Amend. 11 provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

**4.** Sec. 8, Cl. 3 provides that Congress shall have the power: [3.] To regulate commerce with foreign nations, and among the several States and with the Indian tribes.

**5.** 11 U.S.C. § 106 provides: Waiver or sovereign immunity.

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy

Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for a costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

(b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

(c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

tions of the discharge injunction of § 524. *See, In re Merchants Grain, Inc.*, 59 F.3d 630 (7th Cir.1995) *vacated and remanded* — U.S. ——, 116 S.Ct. 1411, 134 L.Ed.2d 537 (1996) (Congress' 1994 revision of § 106 unequivocally evidenced its intent to abrogate the States' immunity from suit). The question is whether Congress has authority to abrogate this immunity under the Bankruptcy Clause of the United States Constitution (U.S. Const. Art. I, § 8, Cl. 4 [6]). Answered yes by the Seventh Circuit in *Merchants Grain*, but remanded by the Supreme Court for reconsideration in light of *Seminole Tribe.* —— U.S. at ——, 116 S.Ct. at 1411.

Because *Seminole Tribe* determined that the Commerce Clause does not grant Congress the authority to abrogate the States' Eleventh Amendment immunity, it logically follows that the Bankruptcy Clause also lacks such authorization. The Bankruptcy Clause, like the Commerce Clause, lacks language granting Congress authority to enforce the bankruptcy provisions against the States through private rights of action for damages. Both the majority opinion and the dissent in *Seminole Tribe* intimated that the holding invalidated Congress' efforts under the Bankruptcy Code to abrogate this immunity. —— U.S. at ——, n. 16, 116 S.Ct. at 1131,

n. 16; *Id.* at ——, 116 S.Ct. at 1134 (Stevens' dissent). Whether Congress acted beyond its constitutional power by applying § 106 of the Bankruptcy Code to the States must be decided before a tribunal exercising the judicial power of the United States under Article III of the Constitution, not here. *Northern Pipe Line Constr., Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 58–59, 102 S.Ct. 2858, 2865, 73 L.Ed.2d 598 (1982). However, resolution of this issue is not now required because Georgia has waived its Eleventh Amendment immunity.

■ Notwithstanding a Congressional inability to abrogate a State's immunity from suit, the State may waive that immunity and subject itself to suit in federal court. Georgia asserts that, under its constitution, only the Georgia legislature may waive its sovereign immunity, and that waiver is limited to the extent provided in the Georgia Constitution. Ga. Const.1983, Art. I, Sec. II, Para. IX(e) [7]. Notably, paragraph (f) provides that the Georgia Constitution's limited waiver of sovereign immunity does not include the State's Eleventh Amendment immunity. Therefore, Georgia has not by its constitution or legislative enactment waived its immunity from suit in federal court for violations of the

---

**6.** Sec. 8, Cl. 4 provides that Congress shall have the power: [4.] To establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States.

**7.** Georgia Constitution Art. I, § II, Para. IX provides:

(a) The General Assembly may waive the state's sovereign immunity from suit by enacting a State Tort Claims Act, in which the General Assembly may provide by law for procedures for the making, handling, and disposition of actions or claims against the state and its departments, agencies, officers, and employees, upon such terms and subject to such conditions and limitations as the General Assembly may provide.

(b) The General Assembly may also provide by law for the processing and disposition of claims against the state which do not exceed such maximum amount as provided therein.

(c) The state's defense of sovereign immunity is hereby waived as to any action ex contractu for the breach of any written contract now existing or hereafter entered into by the state or its departments and agencies.

(d) Except as specifically provided by the General Assembly in a State Tort Claims Act, all offi-

cers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived.

(e) Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.

(f) No waiver of sovereign immunity under this Paragraph shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution.

bankruptcy discharge injunction. *See, Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985) *reh'g denied*, 473 U.S. 926, 106 S.Ct. 18, 87 L.Ed.2d 696 (1985) (a State does not waive its Eleventh Amendment immunity from suit in federal court by waiving its immunity from suit in state court).

█ Although Georgia has not legislatively waived its Eleventh Amendment immunity, the weight of authority establishes that it can, and here has, waived this immunity by filing a proof of claim against the Debtor's estate. *See, University Medical Ctr. v. Sullivan (In re University Medical Ctr.)*, 973 F.2d 1065, 1086 (3d Cir.1992); *995 Fifth Ave. Assoc. v. New York State Dept. of Tax. and Fin. (In re 995 Fifth Ave. Assoc.)*, 963 F.2d 503 (2d Cir.1992), *cert. denied*, 506 U.S. 947, 113 S.Ct. 395, 121 L.Ed.2d 302 (1992); *Sullivan v. Town & Country Home Nursing Svc., Inc. (In re Town & Country Home Nursing Svc., Inc.)*, 963 F.2d 1146, 1150 (9th Cir. 1992); *WJM, Inc. v. Mass. Dept. of Public Welfare*, 840 F.2d 996 (1st Cir.1988). The Supreme Court has not directly addressed whether a State waives its Eleventh Amendment immunity from suit in federal court by filing a proof of claim in a bankruptcy case. However, it has ruled that creditors who file proofs of claim against a debtor's estate submit themselves to the bankruptcy court's equitable jurisdiction. *Langenkamp v. Culp*, 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990), rehearing denied, 498 U.S. 1043, 111 S.Ct. 721, 112 L.Ed.2d 709 (1990), *citing Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). Both cases dealt with a creditor's right to jury trial under the Seventh Amendment to the United States Constitution. The rationale used in *Granfinanciera* and *Langenkamp* applies equally here.

In *Granfinanciera* [the Supreme Court] recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power. 492 U.S. at 58–59, and n. 14, 109 S.Ct. at 2799–2800, and n. 14 (citing [*Katchen v. Landy*, 382 U.S. 323 at 336, 86 S.Ct. 467 at 476 15 L.Ed.2d 391 (1966) ] ).

If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity. *Ibid.* In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's *equitable jurisdiction. Granfinanciera, supra*, 492 U.S. at 57–58, 109 S.Ct. at 2798–2799.

*Langenkamp, supra*, 498 U.S., at 44, 111 S.Ct. at 331. In this case Georgia submitted a proof of claim thereby triggering the process of allowance and disallowance of its claim and subjecting itself to this court's equitable power. Nothing is more fundamental to the restructuring of the debtor-creditor relationship under the bankruptcy court's equitable jurisdiction than the resolution of debt through the claims process and the issuance and enforcement of the discharge.

If a state desires to participate in the assets of a bankrupt, she must submit to appropriate requirements by the controlling power; otherwise, orderly and expeditious proceedings would be impossible and a fundamental purpose of the Bankruptcy Act would be frustrated.

*New York v. Irving Trust Co.*, 288 U.S. 329, 332, 53 S.Ct. 389, 391, 77 L.Ed. 815 (1933) Although *Irving Trust* arose under the Bankruptcy Act, judicially created concepts under the Act remain viable under the Code unless Congress enacts legislation to specifically overrule the interpretation. *Midlantic Nat. Bank v. New Jersey Dept. of Envtl. Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986); *Vasquez v. Hillery*, 474 U.S. 254, 265, 106 S.Ct. 617, 624, 88 L.Ed.2d 598 (1986) (Stare decisis counsels against overruling settled precedent). "It is traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide by the consequences of that procedure.... When the State becomes the actor and files a claim against the fund it waives any immunity which it otherwise might have had respecting the adjudication

of the claim." (Citations omitted) *Gardner v. New Jersey,* 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947) *reh'g denied,* 330 U.S. 853, 67 S.Ct. 768, 91 L.Ed. 1296 (1947).

 The discharge order "operates as an injunction against the commencement or continuation of an action, the employment of process, *or an act, to collect,* recover or offset any such [discharged] debt as a personal liability of the debtor." (emphasis added) 11 U.S.C. § 524(a)(2). Issuing an injunction is an exercise of the court's equitable jurisdiction. *N.L.R.B. v. P\*I\*E\* Nationwide, Inc.,* 894 F.2d 887, 893 (7th Cir.1990). The enforcement of this injunction is integral to the restructuring of the debtor-creditor relationship and fundamental to the court's equitable jurisdiction. *Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 796–798, 107 S.Ct. 2124, 2132–2133, 95 L.Ed.2d 740 (1987), *citing Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 450, 31 S.Ct. 492, 501, 55 L.Ed. 797 (1911); *Hardy v. United States of America (In re Hardy),* 171 B.R. 912, 915 (Bankr.S.D.Ga.1994). The bankruptcy court is empowered to take any action necessary or appropriate to enforce the discharge order. (11 U.S.C. § 105(a); 28 U.S.C. § 157).

## II. GEORGIA'S COLLECTION EFFORTS VIOLATED THE POST DISCHARGE INJUNCTION.

 In this case by order dated August 9, 1995 I determined that the Debtors' taxes due Georgia for years 1980 through 1984 were discharged in their Chapter 7 case. Georgia contends that it did not willfully violate the discharge injunction because the complained of conduct occurred before the August 9 order. Georgia does not dispute that it received the order filed May 18, 1993 in the Debtors' bankruptcy case sustaining Debtors' objection to the status of Georgia's proof of claim and changing the claim from unsecured priority to general unsecured status. Nor does Georgia dispute that it received notice of the Debtor's discharge order filed February 1, 1994. It is also undisputed that Georgia, with full knowledge of the Debtor's discharge, instituted collection actions for prebankruptcy debts without first seeking a determination of dischargeability of those debts under § 523. The extent of a debtor's discharge is final at the time the discharge order is entered. *Burke v. United States of America (In re Burke),* Ch. 7 Case No. 92–11482, Adv. No. 95–01043 slip op. at 5 (Bankr.S.D.Ga. November 17, 1995). A later adversary proceeding at most resolves whether a particular debt was within the original scope of the discharge. *Id., citing In re Crull,* 101 B.R. 60, 61 (Bankr.W.D.Ark. 1989); *In re Anderson,* 72 B.R. 495, 496 (Bankr.D.Minn.1987). Georgia violated the discharge injunction of § 524 by making post-discharge collection efforts on discharged debts. Georgia cannot escape this determination because it chose not to seek a determination of the dischargeability of these debts until after it instituted collection efforts and the Debtors brought an action against it for violating the injunction. The fact that no prior determination of dischargeability was made is one factor to consider in whether to impose sanctions upon Georgia and if so to what extent. *United States v. United Mine Workers,* 330 U.S. 258, 303, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947) (Framing civil contempt sanctions is within the sound discretion of the trial court.)

It is therefore ORDERED that the State of Georgia's motion to dismiss considered a motion for summary judgment is DENIED.