**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

AER-AEROTRON, INCORPORATED,
Plaintiff-Appellee,

HOLMES P. HARDEN,
Trustee-Appellee,

No. 95-2987

v.

THE TEXAS DEPARTMENT OF
TRANSPORTATION,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, District Judge.
(CA-95-146-5-H, BK-94-20-5-AP)

Argued: September 26, 1996

Decided: January 21, 1997

Before HALL, NIEMEYER, and HAMILTON, Circuit Judges.

_____

Reversed and remanded by published opinion. Judge Hall wrote the
majority opinion, in which Judge Hamilton joined. Judge Niemeyer
wrote a separate opinion concurring in the judgment.

_____

**COUNSEL**

**ARGUED:** Katherine E. Kasten, Assistant Attorney General, Trans-
portation Division, TEXAS ATTORNEY GENERAL'S OFFICE,
Austin, Texas, for Appellant. J. Stephen Ravel, BICKERSTAFF,

HEATH, SMILEY, POLLAN, KEVER & MCDANIEL, Austin, Texas, for Appellees. **ON BRIEF:** Trawick H. Stubbs, Jr., Judith L. Goldsborough, Neal Brickman, STUBBS, PERDUE & AYERS, P.A., New Bern, North Carolina, for Appellees.

_____

**OPINION**

HALL, Circuit Judge:

The Texas Department of Transportation (TDOT) appeals the district court's order that affirmed the bankruptcy court's order denying TDOT's motion to dismiss an adversary proceeding brought against it by debtor AER-Aerotron, Inc., to recover on various contract claims. The lower courts ruled that the debtor's action was not barred by the Eleventh Amendment because TDOT had waived its immunity by filing a proof of claim in the bankruptcy proceeding. We hold that TDOT did not waive its Eleventh Amendment immunity. Accordingly, we reverse and remand.

I

In 1991, TDOT contracted with AER-Aerotron for the installation of a statewide radio system. Things did not go well, and each side blames the other. In any event, TDOT terminated the contract in December, 1992. In January, 1993, AER-Aerotron filed for chapter 11 bankruptcy in North Carolina. Although not listed in any of the schedules, TDOT was aware of the filing from the outset. Nevertheless, between February and October, 1993, TDOT sent four letters to AER-Aerotron demanding the refund of some $396,000 already paid under the contract.

On April 24, 1994, AER-Aerotron filed an adversary proceeding in the bankruptcy court against TDOT for $224,000 allegedly owed for equipment accepted under the contract, plus other damages arising out of the cancellation of the contract.[1] Asserting that the action was barred by the Eleventh Amendment, TDOT moved to dismiss.

_____

[1] The bankruptcy case was subsequently converted to a Chapter 7 proceeding, and the trustee intervened as a party plaintiff.

The bankruptcy court denied the motion to dismiss on the ground that the letters sent by TDOT after it was aware of the bankruptcy filing were an "affirmative demand" that constituted a waiver of its Eleventh Amendment right to immunity from suit in federal court under 11 U.S.C.A. § 106(a) (1993). In re AER-Aerotron, 172 B.R. 202 (Bankr. E.D.N.C. 1994). On appeal, the district court remanded to the bankruptcy court for reconsideration in light of the intervening enactment of the Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, 108 Stat. 4150. On remand, the bankruptcy court found that the letters constituted a "written informal proof of claim" that was "sufficient to waive sovereign immunity" under the new statute. In re AER-Aerotron, Inc., 181 B.R. 268 (Bankr. E.D.N.C. 1995). This order was affirmed by the district court, and TDOT brings this appeal.

II

A

The bankruptcy court decided the case the first time under the pre-Reform Act version of § 106(a), which provided that

> a governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

Although the States generally have Eleventh Amendment immunity from suit in federal court, this immunity may be waived. See, e.g., Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990) ("The Eleventh Amendment bar to suit is not absolute. States may consent to suit in federal court."). The courts had not, however, reached a consensus as to what exactly constituted a waiver under this statute.

At one end of the spectrum were those cases that had held that the mere existence of a claim by the state was sufficient for a waiver. See, e.g., In re Craftsmen, Inc., 163 B.R. 88 (Bankr. N.D. Tex. 1993). Further along were cases finding a waiver in affirmative action by the

3

state evidencing a claim, see In re Town & Country Home Nursing Services, Inc., 963 F.2d 1146 (9th Cir. 1991) (offsetting overpayments against Medicare reimbursements due debtor), and in written demands to the debtor of the sort at issue in this case. At the furthest point were those cases finding waiver only upon the filing of a formal proof of claim with the court. Although we had not yet addressed the issue in a waiver of immunity case, we had tended to employ a fairly lenient definition of what constituted a claim in other contexts. See, e.g., In re Davis, 936 F.2d 771, 775-76 (4th Cir. 1991) ("For an amended claim to be allowed in the absence of a prior written informal claim, the creditor . . . must undertake some affirmative action to constitute sufficient notice that he has a claim against the estate.").[2]

The bankruptcy court, after determining that "some affirmative conduct" was required before waiver would be found, held that the post-petition letters sent to AER-Aerotron constituted a waiver of the State's immunity from suit in federal court by the debtor to recover for a claim arising out of the same contract that was the source of TDOT's claim. TDOT appealed to the district court.

B

On October 22, 1994, while the appeal of the first bankruptcy court decision was pending, the 1994 Bankruptcy Reform Act went into effect. The Reform Act purports to abrogate state governmental immunity in numerous respects; for example, states may not claim immunity from sanctions for violating the automatic stay provisions. See 11 U.S.C.A. § 106(a)(1) (West Supp. 1996). However, the waiver provisions of § 106(a) of the former statute found their way into the Reform Act in the following form:

_____

[2] Much of the caselaw on the subject of informal proof of claims has arisen in the context of late claims rather than waiver. See In re Houbigant, 190 B.R. 185, 187 (Bankr. S.D.N.Y. 1996) ("The informal proof of claim is an equitable principle developed by courts to alleviate the harsh results of strict enforcement of the bar date."). The equitable principles that courts use to avoid the bar on late filings, however, are not readily importable to the question of State waivers of immunity.

4

> A governmental unit *that has filed a proof of claim in the case* is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

11 U.S.C.A. § 106(b) (West Supp. 1996) (emphasis added). In adding the language highlighted above, Congress clearly eliminated those situations in which the mere existence of a claim would suffice to constitute a waiver. The question on remand to the bankruptcy court was how much more the Reform Act had changed the rules for finding a waiver.[3]

The bankruptcy court framed the question as whether the new § 106(b) required that a *formal* proof of claim be filed in order for a waiver to be found. The legislative history was sparse:

> Section 106(b) is clarified by allowing a compulsory counterclaim to be asserted against a governmental unit only where such unit has actually filed a proof of claim in the bankruptcy case. This had the effect of overruling contrary case law, such as [3 named cases] that interpreted § 106(a) of [pre-Reform Act] law.

Bankruptcy Reform Act of 1994 - Section-by-Section Description; 140 Cong. Rec. H10752-01, H10766 (1994). The district court noted that, inasmuch as each of the three cases cited in the congressional report held that the mere existence of a claim was enough to constitute a § 106(a) waiver, the legislative history points toward eliminating *only* those waivers unaccompanied by affirmative action by the governmental unit. The court then concluded that informal written proofs of claims, such as TDOT's letters to AER-Aerotron, continue to constitute waivers in the same manner as under pre-Reform Act law; instead of using the term "filed . . . in the case," Congress "could

---

**3** The waiver provisions of § 106(b) were made expressly applicable to cases pending on the date of the enactment of the Reform Act. Pub. L. 103-394, § 702(b)(2)(B).

5

very easily have chosen to include the phrase `filed . . . with the court.'" [4] <u>Texas Dept. of Transp. v. AER-Aerotron</u>, No. 5:95-CV-146-H at 11 (E.D.N.C. Oct. 10, 1995) (order). AER-Aerotron appealed again.

C

The statutory interpretation issue is simply stated: Does a written post-petition demand sent to a debtor[5] satisfy the statutory waiver requirement of a "filing of a proof of a claim in the case"? At a minimum, as noted above, § 106(b) removes from consideration the possibility that the mere existence of a claim against the debtor by the State still constitutes a waiver of that State's immunity. Even if the language of the statute were not sufficient on this point, the inclusion of the three cases noted in the legislative history as being expressly overruled settles the issue. The bankruptcy and district courts erred, however, in concluding that because <u>only</u> these three cases were expressly noted, Congress intended to maintain the expansive view of waiver "commonly found in bankruptcy practice . . . ." <u>Id.</u> at 7.

When we are confronted with a question of whether a State has consented to be sued, the general rule is that we will find a waiver "only where stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." <u>Welch v. Texas Dept. of Highways and Public Transp.</u>, 483 U.S. 468, 473 (1987) (internal citations and quotations omitted). Perhaps the standard should be no less stringent when we are considering a Congressional attempt to define waiver. However, our interpretation of § 106(b) rests on that most basic guide to the meaning of statutes, the words of the statute itself.

_____

**4** As additional support for this interpretation, the district court stressed that "[o]ne of the Bankruptcy Code's main purposes is to marshall the debtor's assets for an equitable distribution to all creditors."

**5** We deem it irrelevant that AER-Aerotron was a debtor-in-possession when it received the letters. Bankr. R. 5005(c) provides that <u>erroneous</u> delivery of a paper to a trustee, the trustee's attorney, a judge or district court clerk shall be deemed to have been properly filed with the bankruptcy court clerk. Although a debtor-in-possession generally has the same duties and powers of a trustee, TDOT clearly did not intend to file the letters with the court.

6

The new § 106(b) injects three new related requirements: "filed," "proof of claim," and "in the case." Surely something in writing-- something capable of being "filed"--is required, and "in the case" connotes the involvement of the bankruptcy court clerk to some degree with the written filing. "Proof of claim" is a specifically defined concept. Although the letters from TDOT arguably satisfy the definition of "proof of claim" in Rule 3001(a)--"a written statement setting forth a creditor's claim"--the same rule also prescribes an official form for claims. Rule 5005, however, requires that "proofs of claim . . . required to be filed by these rules . . . shall be filed with the clerk . . . ." The plain meaning of the words of the statute leads us to conclude that TDOT did not "file[ ] a proof of claim in the case" when it sent the letters.

We hold simply that a State's transmission to a debtor of a written demand for payment of a claim, without more, does not constitute the "filing of a proof of claim in the case" as that term is used in § 106(b) of the Bankruptcy Reform Act of 1994. TDOT is immune from the suit that is the subject of this appeal.

III

TDOT urges us to find a basis for reversal in the recent decision in Seminole Tribe of Florida v. Florida, 116 S. Ct. 1114 (1996), in which the Court held that Congress is powerless to abrogate the States' Eleventh Amendment immunity under the Indian Commerce Clause of Article I, § 8 of the Constitution. The Court has remanded one bankruptcy case for reconsideration in light of the Seminole decision,**6** and perhaps the handwriting is on the wall that the abrogation provisions of the Bankruptcy Reform Act will suffer the same fate as the statutes involved in Seminole. See, e.g., Matter of Midland Mechanical Contractors, Inc., 200 B.R. 453 (Bankr. N.D. Ga. 1996) (abrogation provisions of § 106 of the Bankruptcy Reform Act of 1994 Code do not affect the States' Eleventh Amendment immunity). Nevertheless, in light of our determination that TDOT did not "file a proof of claim" within the meaning of § 106(b) of the Reform Act, we

_____

**6 Ohio Agr. Commodity Depositors Fund v. Mahern**, 116 S. Ct. 1411 (1996), vacating judgment and remanding in Matter of Merchants Grain, Inc., 59 F.3d 630 (7th Cir. 1995).

7

have no occasion to address the broader constitutional question. See State of Md. v. E.P.A., 530 F.2d 215, 227 (4th Cir. 1975) ("[I]f a case can be decided on either of two grounds one involving a constitutional question, and the other, a question of statutory construction or general law, the court should decide on the basis of the latter."), vacated on other grounds, 431 U.S. 99 (1977). There is simply no need to determine if Congress, acting pursuant to its Article I bankruptcy powers, could have abrogated the States' immunity when, under the circumstances of the case before us, abrogation never came into play.

For essentially the same reasons we do not address abrogation, we decline to offer conjecture as to what ramifications Seminole might have with regard to Congress's power to define the circumstances under which a State is deemed to have waived its Eleventh Amendment immunity. See Parden v. Terminal Ry. of Alabama State Docks Dept., 377 U.S. 184 (1964) (question of waiver is one of federal law). The courts that have addressed the waiver issue in the wake of Seminole appear to agree that the filing of a formal proof of claim still acts as a waiver of immunity with regard to claims of the debtor arising out of the same transaction. See In re Sacred Heart Hosp., 199 B.R. 129 (Bankr. E.D. Pa. 1996). Some courts have found that a formal proof of claim acts as a waiver in other respects. See In re Headrick, 200 B.R. 963 (Bankr. S.D. Ga. 1996) (State's filing of a proof of claim acted as a waiver of the State's immunity from sanctions for violations of the automatic stay); In re Burke, 200 B.R. 282 (Bankr. S.D. Ga. 1996) (same; violation of discharge injunction).

We realize that the power to define waiver can become the functional equivalent of the power to abrogate. Indeed, defining waiver as anything less than "the sort of voluntary choice which we generally associate with the concept of constitutional waiver" permits Congress to do indirectly what it perhaps could not do otherwise. Employees of Dept. of Public Health and Welfare v. Dept. of Public Health and Welfare, 411 U.S. 279, 296 (1973) (Marshall, J., concurring). Again, however, inasmuch as we have already determined that TDOT did not "file[ ] a proof of claim in the case" and, therefore, never brought the statutory waiver provisions into play, we end the matter there.**7**

_____

**7** AER-Aerotron contends that only the Texas state legislature has the power to waive the State's immunity from suit and that no such waiver

8

IV

The order of the district court is reversed, and the case is remanded with instructions to dismiss AER-Aerotron's adversary proceeding against TDOT.

REVERSED AND REMANDED

NIEMEYER, Circuit Judge, concurring in the judgment only:

AER-Aerotron, Incorporated, a bankrupt contractor to the Department of Transportation of the State of Texas, sued Texas in the United States Bankruptcy Court for the Eastern District of North Carolina for $224,000 allegedly due for equipment that AER-Aerotron delivered under its contract with Texas. Texas asserted Eleventh Amendment immunity from suit in federal court. The bankruptcy court and the district court held that Texas had waived its sovereign immunity by sending demand letters to AER-Aerotron with knowledge that it was a debtor in possession. The letters related to the inadequacy of AER-Aerotron's contractual performance. The bankruptcy court and the district court interpreted 11 U.S.C.§ 106 to provide that such demand letters constituted a "proof of claim in the case" and therefore amounted to a waiver under § 106. That section, as amended in 1994, provides in relevant part:

> (a) Notwithstanding an assertion of sovereign immunity, <u>sovereign immunity is abrogated</u> as to a governmental unit to the extent set forth in this section with respect to the following:
>
> (1) [referring to this section 106]. . . .

* * *

> (b) <u>A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity</u>

_____

is involved in this case. We leave for another day the issues revolving around the authority to waive, and to define what can be deemed a waiver of, Eleventh Amendment immunity.

9

with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

(Emphasis added).

The majority has today reversed the lower court's ruling by holding that "a State's transmission to a debtor of a written demand for payment of a claim, without more, does not constitute the `filing of a proof of claim in the case,' as that term is used in§ 106(b) of the Bankruptcy Reform Act of 1994." Slip op. at 7. Based on that statutory interpretation, the majority concludes that Texas did not waive its sovereign immunity. Because of the outcome that the majority reaches through its statutory interpretation of§ 106, it concludes that "we have no occasion to address the broader constitutional question" of whether the Eleventh Amendment bars this suit or bars Congress' attempt to define a state's waiver of sovereign immunity. Slip op. at 7-8.

While I would agree with the statutory interpretation placed on 11 U.S.C. § 106(b) by the majority, I conclude that we must address the Eleventh Amendment issue first because it determines our power as a court to make any statutory interpretation. And if we were to conclude that we have the power to construe the statute, we would still have to decide whether Congress had the power, under Article I, section 8, clause 4, of the Constitution, to enact a provision that defines when a State waives sovereign immunity before the federal bankruptcy courts.

I

In the bankruptcy court, in the district court, and on appeal before us, Texas has raised two interrelated threshold constitutional questions: (1) whether we have authority to reach the merits of a statutory interpretation when Texas contends that it has not consented to this suit filed in federal court and (2) whether Congress overstepped its power in purporting to abrogate Texas' immunity under Article I, section 8, clause 4 of the Constitution.**1**  Because federal power to adjudi-

_____

**1** Although 11 U.S.C. § 106(b) speaks of when a state is "deemed to have waived sovereign immunity," § 106(a) says that state immunity is

cate against states is at issue, we cannot, as a matter of convenience, decide the statutory meaning of 11 U.S.C. § 106 in order not to reach the constitutional questions. Rather, we must first answer the constitutional questions to determine whether, in the face of such a challenge, we have the power to adjudicate matters beyond the questions of our power and Congress' power.

II

The Eleventh Amendment is phrased to limit jurisdiction of the federal courts as follows: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has consistently interpreted the Eleventh Amendment to recognize that "it is inherent in the nature of [state] sovereignty not to be amenable to the suit of an individual without its consent." Seminole Tribe of Florida v. Florida, 116 S.C. 1114, 1122 (1996) (citations omitted). In Seminole Tribe, the Supreme Court held that the Eleventh Amendment prohibits Congress' attempt to authorize suits by Indian tribes against the states. Id. The Court observed that "federal jurisdiction over suits against unconsenting states `was not contemplated by the Constitution when establishing the judicial power of the United States.'" Id. (quoting Hans v. Louisiana, 134 U.S. 1, 15 (1890)). Accordingly, we must first address whether Texas waived the benefit of the constitutional limitation.

Moreover, if Seminole Tribe made anything clear, it is that Eleventh Amendment immunity is a function of a State's sovereign constitutional status, not Congress' Article I powers. See id. at 1131-32 ("The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction"). Accordingly, Congress' enactments under Article I are irrelevant to whether a state retains its

_____

"abrogated . . . to the extent set forth in this section [106]." (Emphasis added). Congress apparently believed that the "deemed waiver" of § 106(b) was the extent of abrogation under§ 106(a).

11

Eleventh Amendment immunity because Congress lacks power to affect that immunity in the exercise of its Article I powers.**2**

Thus, by analyzing Texas' immunity only in terms of Congress' Article I enactments, I believe that the majority has committed the very error identified in Seminole Tribe. By analyzing the question as it has, the majority suggests that states are amenable to suits in federal courts when Congress, acting pursuant to its Article I bankruptcy power, deems it so. Congress, I respectfully suggest, lacks such power in our system of federalism.

III

Instead of interpreting an Article I enactment of Congress, I believe we must apply the constitutional doctrine of Eleventh Amendment waiver. To find a waiver of Eleventh Amendment immunity, "we require an unequivocal indication that the state intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment." Atascadero State Hosp. v. Scanlon , 473 U.S. 234, 238 n.1 (1985). Since there is no such unequivocal indication here, I would agree with the majority that Texas has not waived its sovereign immunity.

In approaching the question without regard to 11 U.S.C. § 106, I do not mean to suggest that the statute incorrectly describes those actions which constitute a state's waiver of sovereign immunity. But such actions constitute a waiver of immunity not because Congress in § 106 has said so. Seminole Tribe held that Congress' Article I powers are irrelevant to an Eleventh Amendment waiver. Instead, a state's actions waive immunity when such actions are independently sufficient under Eleventh Amendment doctrine. Thus, although 11 U.S.C. § 106 may restate the law of Eleventh Amendment waiver, it does not establish the law on the subject.

_____

**2** The Supreme Court affirmed Congress' power, not involved here, to affect state immunity in federal court through the Fourteenth Amendment. See Seminole Tribe, 116 S.C. at 1128.