IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-31013

_____

In The Matter Of:  JULIAN E FERNANDEZ, Estate of

                                          Debtor,

DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT,
State of Louisiana,

                                          Appellant,


                        versus

PNL ASSET MANAGEMENT COMPANY LLC;
JEAN O TURNER,

                                          Appellees.

*********************************************************************

No. 97-30529

In The Matter of:  JULIAN E FERNANDEZ,

                                          Debtor,

STATE OF LOUISIANA, Department of Transportation
and Development,

                                          Appellee,


                        versus

JEAN O TURNER, trustee;
PNL ASSET MANAGEMENT COMPANY,

                                          Appellants.

_____

Appeals from the United States District Court
for the Eastern District of Louisiana

_____

September 15, 1997

Before REYNALDO G. GARZA, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

     The State of Louisiana and the Louisiana Department of

Transportation and Development contend that the Eleventh Amendment

denies the Bankruptcy Court jurisdiction in this adversary action, and Congress cannot constitutionally displace the State's immunity by Section 106(a) of the Bankruptcy Code[1] (11 U.S.C. § 106(a) (1994)).  The district court agreed.  We now affirm.

I.

On August 8, 1974, New Communities, Inc. sold property in Terrebonne Parish, Louisiana, to Julian E. Fernandez who purported to act as a general partner of a Louisiana partnership called JEF Developers.  But JEF came into existence only a day later on August 9, 1974, when the articles of partnership were executed.

PNL Asset Management Company LLC is the owner of a recorded judgment against Fernandez.  In 1984, the State of Louisiana purchased two parcels of the property from JEF Developers in two separate transactions.  The title to the property is now disputed.  The State's claim of title rests on the two sales transactions in 1984.  PNL contends that the state's title is flawed, since it is Fernandez individually, and not JEF, the partnership, who owns the property and has since 1974.

PNL's predecessor in interest, NCNB Texas National Bank brought this adversary action after Fernandez declared Chapter 11 bankruptcy on June 15, 1989.  The State and the DOTD moved for dismissal pointing to the Eleventh Amendment.  The bankruptcy court

_____

[1]     11 U.S.C. § 106(a) states in pertinent part:
          Notwithstanding an assertion of sovereign immunity,
          sovereign immunity is abrogated as to a
          governmental unit to the extent set forth in this
          section...

denied this motion and held that Section 106(a) of the Bankruptcy Code abrogated the State's Eleventh Amendment sovereign immunity thus permitting the bankruptcy court to retain jurisdiction over the State and the DOTD. The district court partially affirmed and partially reversed the bankruptcy court's judgment. On September 25, 1996, the DOTD filed its first appeal to this court contending that the bankruptcy court did not have jurisdiction over the State and the DOTD.

In light of the Supreme Court's decision in <u>Seminole Tribe of Florida v. Florida</u>[2], on April 16, 1997, the district court issued another order dismissing the State and the DOTD from this action. In May, 1997, PNL and the trustee in bankruptcy, Jean O. Turner, filed a second appeal to this court contending that Section 106(a) was constitutional, and therefore, the federal courts had jurisdiction over the State and the DOTD. These two appeals, which raise the same jurisdictional question, have been consolidated.


II.

<u>Seminole Tribe</u> outlined a two-part test of abrogation: first, has Congress unequivocally expressed its intent to abrogate the immunity; and second, has Congress acted pursuant to a valid exercise of its power. <u>Seminole Tribe</u>, 116 S. Ct. at 1123.

Section 106(a) clearly expresses Congressional intent to abrogate sovereign immunity. No party contends otherwise. The sole question then is whether Congress had the power to do so.

---

[2]      __ U.S. __, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996).

A.

PNL and Turner contend that Congress had the power to abrogate state sovereign immunity by enacting Section 106(a) pursuant to its bankruptcy power in Art. I, § 8, cl. 4[3]. We think not.

Seminole Tribe held that Congress may not abrogate state sovereign immunity by legislation passed pursuant to its Article I powers. Id. at 1131-32. The Court stated:

> Even when the Constitution vests in Congress complete lawmaking authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States. The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.

Id.

Turner contends that Seminole Tribe only held that Congress could not abrogate sovereign immunity pursuant to the Indian and Interstate Commerce Clauses and did not address all of Congress' Article I powers. In addition, Turner notes that the Bankruptcy Clause is distinguishable from the Commerce Clause since it contains an affirmative requirement of uniformity. We find both arguments to be unpersuasive.

As the quoted passage from Seminole Tribe notes, Congress' Article I powers cannot be used to circumvent the Eleventh Amendment restrictions on federal judicial power. Seminole Tribe

---

[3] Art. I, § 8, cl. 4 states in pertinent part: The Congress shall have Power ... To establish ... uniform Laws on the subject of Bankruptcies throughout the United States...

4

explicitly overruled <u>Pennsylvania v. Union Gas Co.</u>[4] -- the only Supreme Court case that held Congress may abrogate sovereign immunity pursuant to its Article I powers. <u>Seminole Tribe</u>, 116 S. Ct. at 1128. With respect to Congress' bankruptcy power in particular, Chief Justice Rehnquist noted in <u>Seminole Tribe</u> that "it has not been widely thought that the federal antitrust, bankruptcy, or copyright statutes abrogated the States' sovereign immunity. This Court never has awarded relief against a State under any of those statutory schemes." <u>Id.</u> at 1131-32 n.16.

We find no principled reason to distinguish in a relevant way Congress' Commerce Clause power that it purported to exercise in <u>Seminole Tribe</u> from its power under the Bankruptcy Clause for the purposes of state sovereign immunity. <u>See</u> <u>Hoffman v. Connecticut Dep't of Income Maintenance *et al.*</u>, 492 U.S. 96, 105, 109 S. Ct. 2818, 2825, 106 L. Ed. 2d 76 (1989) (Scalia, J., concurring in judgment) (noting that "there is no basis for treating [Congress'] powers under the Bankruptcy Clause any differently" from its powers under the Commerce Clause); *In re* <u>Sacred Heart Hosp. of Norristown</u>, 204 B.R. 132, 138 (E.D. Pa. 1997) (noting that "[t]he Bankruptcy Clause is identical to the Indian Commerce Clause in both wording and scope.") On the contrary, the Framers intended that the two powers be treated similarly. As Madison noted in the Federalist No. 42, "the power of establishing uniform laws of bankruptcy is () intimately connected with the regulation of commerce." James Madison, <u>The Federalist No. 42</u> <u>in</u> <u>The Federalist Papers</u>, 271 (C.

---

[4]    491 U.S. 1, 109 S. Ct. 2273, 105 L. Ed. 2d 1 (1989).

Rossiter ed. 1961).  The large grant of power to the national government by the Commerce Clause reflects the felt need to escape the risks of economic balkanization attending the confederation.

The uniformity requirement in the Bankruptcy Clause is not a relevant distinction.  As the Supreme Court noted more than fifty years ago, "[t]he Constitutional requirement of uniformity is a requirement of geographic uniformity" and nothing more.  Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 172, 67 S. Ct. 237, 244-45, 91 L. Ed. 162 (1946).  Holding that federal courts do not have jurisdiction over the states without their consent does not frustrate this requirement of geographic uniformity since sovereign immunity applies uniformly to all states and to all parties in a bankruptcy proceeding.

Congress' bankruptcy power in Article I may be contrasted with its Fourteenth Amendment powers which are deemed "to intrude upon the province of the Eleventh Amendment."  Seminole Tribe, 116 S. Ct. at 1125.  While the history and language of the Fourteenth Amendment make plain that it "fundamentally altered the balance of state and federal power struck by the Constitution," the same cannot be said of Congress' bankruptcy power and its uniformity requirement.  See Seminole Tribe, 116 S. Ct. at 1125 (quoting Fitzpatrick v. Bitzer, 427 U.S. 445, 455, 96 S. Ct. 2666, 2671, 49 L. Ed. 2d 614 (1976)).

Finally, several other courts that have reached this issue in the wake of Seminole Tribe agree that the Bankruptcy Clause does not enable Congress to abrogate state sovereign immunity

H:\MAIL\FERNANDE.PEH

unilaterally.  See, e.g., *In re* Creative Goldsmiths of Washington, D.C., Inc., 1997 WL 406254, *5 (4th Cir. 1997); AER-Aerotron, Inc. v. Texas Dep't of Transp., 104 F.3d 677, 680-81 (4th Cir. 1997) ("[P]erhaps the handwriting is on the wall that the abrogation provisions of the Bankruptcy Reform Act will suffer the same fate as the statutes involved in Seminole." (dictum)); id. at 681 (Niemeyer, J., concurring in judgment) (reading Seminole Tribe as rejecting the notion that "states are amenable to suits in federal courts when Congress, acting pursuant to its Article I bankruptcy power, deems it so"); *In re* Sacred Heart Hosp. of Norristown, 204 B.R. 132, 138 (E.D. Pa. 1997) ; *In re* NVR, L.P., 206 B.R. 831, 837 (Bankr. E.D. Va. 1997); *In re* York-Hannover Devs., Inc., 201 B.R. 137, 140 (Bankr. E.D.N.C. 1996); *In re* Tri-City Turf Club, Inc., 203 B.R. 617, 619-620 (Bankr. E.D. Ky. 1996); *In re* Midland Mechanical Contractors, Inc., 200 B.R. 453, 457-58 (Bankr. N.D. Ga. 1996); *In re* Burke, 200 B.R. 282, 286 (Bankr. S.D. Ga. 1996) and *In re* Martinez, 196 B.R. 225, 230 (D.P.R. 1996).

B.

Turner also contends that Congress has the authority to abrogate state sovereign immunity pursuant to § 5 of the Fourteenth Amendment to enforce either a protected due process property interest or a privilege of federal citizenship, namely, the right to a uniform system of bankruptcy.  We are not persuaded.

There is no evidence that the 1994 Act was passed pursuant to the Fourteenth Amendment or any constitutional provision other than

H:\MAIL\FERNANDE.PEH

the bankruptcy power of Article I, § 8, cl. 4.  See Seminole Tribe, 116 S. Ct. at 1125 (noting that the Indian Gaming Regulatory Act was not passed pursuant to Congress' power under either the Fourteenth Amendment or the Interstate Commerce Clause; rather it was passed pursuant to the Indian Commerce Clause).[5]  Equally, there is no indication that Congress passed the 1994 Act to remedy any incipient breaches or even some unarticulated, general violation of the rights specified in § 1 of the Fourteenth Amendment.  See In re Tri-City Turf Club, Inc., 203 B.R. at 620 ("The court can find no hint that Congress had in its collective mind Fourteenth Amendment concerns when it enacted Section 106(a) of the Bankruptcy Code.").  To cede to Congress the power to pass general, substantive legislation which abrogates state sovereign immunity, pursuant to the Enforcement Clause, would render Eleventh Amendment state sovereign immunity meaningless and eviscerate the fundamental construct of federalism in our constitutional form of government.  See City of Boerne v. Flores, __ U.S. __, __, 117 S. Ct. 2157, 2164-66, 138 L. Ed. 2d 624 (1997); In re NVR, L.P., 206 B.R. at 842 ("[T]his court can conceive of no ground which might warrant the 'discovery' of a bankruptcy privilege in the Fourteenth Amendment.").

---

[5]  In Seminole Tribe, the Supreme Court did not address whether the Fourteenth Amendment authorized Congress to enforce the Indian Gaming Regulatory Act against the States because the petitioner abandoned this issue after the Eleventh Circuit Court of Appeals rejected its argument that the Act created a liberty and property interest subject to Congress' protection under the Fourteenth Amendment.  Seminole Tribe, 116 S. Ct. at 1125.

8

C.

We do not doubt that after <u>Seminole Tribe</u>, a State may voluntarily choose to participate in a bankruptcy proceeding and waive its Eleventh Amendment sovereign immunity. But this remains a choice to be made by the State.


III.

PNL asserts another statutory basis for federal subject matter jurisdiction in this case. PNL's predecessor, the Federal Deposit Insurance Corporation, prosecuted this claim from April 1992 to August 1996, when it sold to PNL the judgment that is the basis for this action. Relying on the concept of continuing federal jurisdiction[6], PNL contends that since the FDIC is an agency of the United States under 12 U.S.C. § 1819(b)(1)[7], federal jurisdiction is provided by 28 U.S.C. § 1345[8]. We fail to see the relevance of this assertion.

---

[6]     <u>Walker v. FDIC</u>, 970 F.2d 114, 120 (5th Cir. 1992) ("[F]ederal jurisdiction persists even though the FDIC is subsequently dismissed."); <u>Bank One Texas, N.A. v. Morrison</u>, 26 F.3d 544, 547 (5th Cir. 1994) ("[T]he FDIC's subsequent dismissal from this case did not deprive the court of subject matter jurisdiction.")

[7]     12 U.S.C. § 1819(b)(1) states:
    The Corporation, in any capacity, shall be an agency of the United States for purposes of § 1345 of Title 28, without regard to whether the Corporation commenced the action.

[8]     28 U.S.C. § 1345 states in pertinent part:
    [T]he district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof, expressly authorized to sue by Act of Congress.

9          <span style="float:right">H:\MAIL\FERNANDE.PEH</span>

It is well-established that the Eleventh Amendment does not bar the United States government from filing suit in federal court against a state.  United States v. Mississippi, 380 U.S. 128, 140, 85 S. Ct. 808, 815, 13 L. Ed. 2d 717 (1965) (noting that "nothing in the [Eleventh Amendment] or any other provision of the Constitution prevents or has ever been seriously supposed to prevent a State's being sued by the United States."); United States v. Texas, 143 U.S. 621, 641-46, 12 S. Ct. 488, 492-94, 36 L. Ed. 285 (1892).  It is, however, a great leap to suggest that by granting federal jurisdiction, 12 U.S.C. § 1819(b)(1) and 28 U.S.C. § 1345 in tandem, permit the FDIC to avoid the Eleventh Amendment by slipping into the shoes of the United States.  While a state's consent to being sued by the United States is deemed to be given when admitted into the Union, the same cannot be automatically said with respect to an agency of the federal government which may be seen to lie "outside the structure of the [original] Union."  See Monaco v. Mississippi, 292 U.S. 313, 322-23, 330, 54 S. Ct. 745, 748, 751, 78 L. Ed. 1282 (1934) (stating that states possess immunity from unconsented suit except where there has been `a surrender of this immunity in the plan of the convention') (quoting The Federalist No. 81); United States v. Texas, 143 U.S. 621, 646, 12 S. Ct. 488, 494, 36 L. Ed. 285 (1892) (stating that Texas consented to being sued by the United States when admitted into the Union).  In other words, the FDIC, as an agency of the national government, does not enjoy the status accorded the national government for Eleventh Amendment purposes.  It follows that there

10

must be a clear expression of purpose to abrogate the Eleventh Amendment in the grant of agency status for the purpose of jurisdiction.  We find no such clarity of purpose, and these statutes fail the first prong of the abrogation test of <u>Seminole Tribe</u>.  <u>Seminole Tribe</u>, 116 S. Ct. at 1123.

IV.

We hold that Section 106(a) of the Bankruptcy Code is unconstitutional.  Congress cannot locate the authority claimed here to abrogate sovereign immunity in either the Bankruptcy Clause or in Section 5 of the Fourteenth Amendment.  Nor does the grant of agency status for purposes of federal jurisdiction allow the FDIC to avoid the reach of the Eleventh Amendment.

We AFFIRM the order of the district court dismissing the State of Louisiana and the Department of Transportation and Development, VACATE all district court and bankruptcy court judgments involving the State and the DOTD and REMAND  for further proceedings not inconsistent with this opinion.

H:\MAIL\FERNANDE.PEH